IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 16-cv-02984-LTB-KLM

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

        Plaintiff,

v.

NORTH TEXAS ANNUAL CONFERENCE OF THE UNITED METHODIST CHURCH, INC.; STONEBRIDGE UNITED METHODIST CHURCH; FRANK WILEY; and TAYLOR GREER,

        Defendants.

---

ORDER

---

Before me are cross-motions for summary judgment on this declaratory judgment action filed by Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity"). The Motion for Summary Judgment filed by Defendant Frank Wiley ("Mr. Wiley") seeks dismissal of Philadelphia Indemnity's request for declaratory relief regarding its duties to defend and to indemnify, under the at-issue insurance policy, for injuries Mr. Wiley incurred during a ski accident in March of 2016. [Doc #50] Philadelphia Indemnity's Motion for Summary Judgment seeks judgment in its favor, and a declaration that there is no duty to defend or indemnify. [Doc #51] Oral arguments would not materially assist me in my determination. After consideration of the parties' briefs, and for the reasons stated, I DENY Mr. Wiley's motion. In addition, I GRANT the motion filed by Philadelphia

Indemnity, I ORDER declaratory relief as requested, and I ORDER the entry of summary judgment in its favor.

## I. BACKGROUND

On March 8, 2016, Mr. Wiley was injured in a ski accident at Wolf Creek Ski Resort that he claims was caused by the negligence of Taylor Greer (the "ski accident"). Mr. Greer was on a high school youth ski trip to Colorado organized by North Texas Annual Conference of the United Methodist Church ("NTAC") and Stonebridge United Methodist Church ("Stonebridge Church"). At the time of the accident, NTAC was insured under a general liability policy issued by Philadelphia Indemnity (PHPK 1301820 – effective from April 1, 2015 through April 1, 2016). Stonebridge Church was also a named insured under the policy as an affiliated church.

On August 9, 2016, Mr. Wiley sued Mr. Greer for the personal injuries he sustained as a result of the ski accident in State of Colorado District Court, Mineral County, Case No. 2016-CV-3002 (the "state court action"). Mr. Wiley claimed that Mr. Greer was a new snowboarder and that, at the time of the accident, he was on terrain above his skill level when he gained too much speed and ran into Mr. Wiley, the downhill skier. Mr. Wiley also brought claims against NTAC and Stonebridge Church for failure to supervise Mr. Greer by allowing him to snowboard on terrain above his ability and without proper knowledge of skiing protocol.

Thereafter, on December 6, 2016, Philadelphia Indemnity filed this lawsuit seeking declaratory relief under the Federal Declaratory Judgments Law, 28 U.S.C.

2

§ 2201 *et seq.* and Fed. R. Civ. P. 57, against NTAC, Stonebridge Church, Mr. Wiley and Mr. Greer. Specifically, Philadelphia Indemnity sought a declaration that it had no duty to provide insurance coverage for the ski accident. [Doc #31]

On March 28, 2017, default judgment was entered against NTAC and Stonebridge Church after they failed to file a response or enter an appearance in this case. [Doc #22] On April 4, 2017, default judgment was entered against Mr. Greer for failure to enter an appearance in this case. [Doc #32] The orders of default declared that: (1) Philadelphia Indemnity "has no duty to provide insurance, including defense or indemnity, coverage to Taylor Greer for the ski accident which took place on March 8, 2016 at Wolf Creek Ski Area, Mineral County, State of Colorado, involving Mr. Greer and Frank Wiley" and (2) "there is no coverage under any part of the [Philadelphia Indemnity] policy for the March 8, 2016 ski accident." Default judgment was not entered against Defendant Wiley, who has filed a response and remains a party to this action.

Then, in September of 2017, Mr. Wiley settled his claims in the state court action with Mr. Greer for $900,000. Mr. Wiley agreed to partial payment from Mr. Greer of $100,000, and further agreed not to execute on or make any efforts to collect/enforce the balance of the judgment "except to the extent of coverage from Philadelphia [Indemnity]." [Doc #56-1] Mr. Wiley also settled his state court claims for failure to supervise against NTAC and Stonebridge Church for $12,500. [Doc #50-6] Following negotiation of the settlement agreements, the parties' filed the cross-motions for summary judgment at issue here.

3

## II. STANDARD OF REVIEW

In his motion, Mr. Wiley contends that he is entitled to summary judgment in his favor on the question of whether Philadelphia Indemnity: (1) had a duty to defend Mr. Greer in the underlying state court action; and (2) has a duty to indemnify and provide coverage for the injuries Mr. Wiley incurred during the ski accident on March 8, 2016. [Doc #50] Specifically, he argues that Philadelphia Indemnity owes a duty to defend Mr. Greer because the allegations in the state court action "contain multiple facts and claims [against Mr. Greer] that might fall within the ambit of the policy." Mr. Wiley further argues that Philadelphia Indemnity owes a duty to indemnify NTAC, Stonebridge Church, and Mr. Greer because the facts as developed, including their subsequent settlement with Mr. Wiley, reveal that Mr. Greer was covered by the policy because he was engaging in a church activity at the time of the accident.

Philadelphia Indemnity, in its motion, asserts that it is entitled to summary judgment in its favor and a declaration that it has no duty to defend or to indemnify any party for the damages incurred by Mr. Wiley in the ski accident. [Doc #51] Philadelphia Indemnity argues that because NTAC, Stonebridge Church, and Mr. Greer have failed to respond, default judgment was entered against them which indicated that "there is no coverage under any part of the policy for the March 8, 2016 ski accident." Although Mr. Wiley was not subject to a default judgment, Philadelphia Indemnity argues that he has no standing to seek a determination of coverage. Philadelphia Indemnity also asserts, in the alternative, that it is entitled

4

to summary judgment and declaratory relief because the policy does not provide coverage in that Mr. Greer did not, at the time of the ski accident, incur liability due to the activities of Stonebridge Church as an entity, nor was he acting on Stonebridge Church's behalf.

The standard for granting summary judgment on a request for a declaratory judgment is the same as for any other type of relief. *Am. Family Mut. Ins. Co. v. Eagle Gen. Contractors, Inc.*, 2007 WL 3090765 (D. Colo. 2007)(unpublished); *see also United States v. Gammache*, 713 F.2d 588, 594 (10th Cir. 1983). Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Plaza Ins. Co. v. Lester*, 110 F.Supp.3d 1041, 1043 (D. Colo. 2015)(noting that when the material facts relevant to a declaratory judgment claim are undisputed, cross-motions seeking summary judgment can be determined as a matter of law).

### III. ANALYSIS

#### A. Standing/Mootness

I first address Philadelphia Indemnity's argument that because default judgment has been entered against NTAC, Stonebridge Church, and Mr. Greer in this matter, and because it is undisputed that they have settled the underlying state court action with Mr. Wiley, Philadelphia Indemnity is entitled to summary judgment in its favor on the basis that Mr. Wiley has no standing.

5

The law in Colorado is that Mr. Wiley, as the injured party, has standing to challenge the declaratory relief sought by Philadelphia Indemnity under the circumstances and posture of this case. In *Constitution Associates v. New Hampshire Insurance Co.*, 930 P.2d 556 (Colo. 1996), the Colorado Supreme Court held that (1) it was proper for the insurer to name the injured party as a party defendant in the declaratory judgment action; and (2) "once joined, [the injured party] may fully participate in the action." *Id.* at 562. As a result, when the insured in that case failed to defend the insurer's motion for summary judgment, the Court ruled that the injured party was entitled to do so, concluding that the injured party "may defend an anticipatory declaratory judgment as long as the action is properly initiated by a party with a legally cognizable claim." *Id.*; *see also Johnson ex rel. Johnson v. Bodenhausen*, 835 F.Supp.2d 1092, 1097 (D. Colo. 2011)(allowing "an injured party to bring a counterclaim for declaratory relief in a declaratory judgment action initiated by an insurer against its insured and the injured party"); *Am. Family Mutual Ins. Co. v. Harris*, 2007 WL 2890132 (D. Colo. Sept. 27, 2007) (unpublished). I reject Philadelphia Indemnity's assertion, made without any authority, that *Constitution Associates v. New Hampshire Insurance* supports a ruling that if the injured party is named in a declaratory judgment action, as is the case here, default judgment entered against the defaulting parties is binding on the injured party who failed to object.

Philadelphia Indemnity also contends that the request for declaratory relief as to its duty to indemnify NTAC and Stonebridge Church is now moot because they have settled in full the claims raised by Mr. Wiley in the underlying state court action. Because default judgment was entered against NTAC and Stonebridge Church, and Mr. Wiley is not now and never will be a judgment creditor of NTAC and Stonebridge Church because his claims against them in the state court actions have been settled for $12,500, I agree with Philadelphia Indemnity that "[t]here is no longer a controversy to decide as to indemnity for NTAC and Stonebridge [Church]." *See generally Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1379 (10th Cir. 2011)(noting that a court does not have jurisdiction to resolve the issue unless that issue arises in a specific dispute having real-world consequences). As a result, the question of whether Philadelphia Indemnity owes a duty to defend and/or indemnify NTAC and Stonebridge Church, as to Mr. Wiley's claims against them in the underlying state action, is no longer at issue in this case.

**B. Choice of Law**

The parties disagree as to the substantive state law applicable to interpret the policy to determine whether Philadelphia Indemnity owes a duty to defend and/or to indemnify Mr. Greer. As a federal court sitting in diversity jurisdiction, I am to apply the law of the state where the claim was brought. *Budd v. American Excess Ins. Co.*, 928 F.2d 344, 346 (10th Cir. 1991). Philadelphia Indemnity argues that Texas law applies to the interpretation of coverage as the state with the most

7

significant relationship to the policy. *See Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009)(ruling under Colorado choice-of-law rules, "an insurance contract is governed by the law of the state with the most significant relationship to the insurance contract"). Because the policy was issued by a Texas insurance producer, for insureds whose place of business is located exclusively in Texas, Philadelphia Indemnity maintains that Texas has the most significant relationship. *See Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996)(ruling that in Colorado, insurance policies are generally interpreted under the law of the state where the policy was issued).

Mr. Wiley contends that Colorado has the most significant relationship because both the "church activity" and ski accident occurred in Colorado, and the underlying case regarding the accident was brought in Colorado. *See generally Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1211 (10th Cir. 2001); *EMC Ins. Companies v. Mid-Continent Cas. Co.*, 884 F. Supp. 2d 1147, 1153 (D. Colo. 2012).

In any event, there are no significant differences between Texas and Colorado law in the interpretation of the policy and its coverage. The law of both states is that insurance policies, as with other contracts, are to be enforced as written. If the policy language is ambiguous, or reasonably susceptible to more than one meaning, the policy is to be construed against the insurer and in favor of the insured. *See Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990)(ruling that

8

when a contractual provision is reasonably susceptible to different meanings it must be construed against the drafter and in favor of providing coverage to the insured); *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1260 (5th Cir. 1997)(it is well-established that ambiguities in insurance contracts are to be strictly construed against the insurer); *Puckett v. U.S. Fire Insurance Co.*, 678 S.W.2d 936, 938 (Tex. 1984).

C. **Duty to Defend**

I first address whether Philadelphia Indemnity was obligated to provide a defense to Mr. Greer for the claims brought against him by Mr. Wiley in the underlying state court action. The duty to defend concerns an "insurance company's duty to affirmatively defend its insured against pending claims." *Constitution Assoc. v. N.H. Ins. Co.*, *supra,* 930 P.2d at 563. To determine whether a duty to defend exists, Colorado courts look no further than the four corners of the underlying complaint (the "four corners" or "complaint" rule). *Id.* (citing *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991)). An insurer is not excused from this duty "unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." *Hecla Mining v. N.H. Ins., supra,* 811 P.2d at 1090; *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003)(noting that "if the alleged facts even potentially trigger coverage under the policy, the insurer is bound to provide a defense").

When determining whether an insurer has a duty to defend, Texas courts follow the "complaint-allegation rule" (or "eight-corners rule") which determines the insurer's duty to defend "by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." *GEICO Gen. Ins. Co. v. Austin Power Inc.*, 357 S.W.3d 821, 824 (Tex. App. 2012); *see also Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009)(ruling that the duty to defend is determined by comparison of the operative complaint to the policy). "The duty to defend protects the insured by requiring a legal defense to allegations without regard to whether they are true." *Id.* at 656; *see also Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 252–53 (5th Cir. 2011)(indicating that the duty to defend means the insurer will defend the insured in any lawsuit that "alleges and seeks damages for an event potentially covered by the policy")(quoting 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance §200:3 (3d ed. 2009)). Thus, when determining whether Philadelphia Indemnity had a duty to defend Mr. Greer against Mr. Wiley's claims in the underlying state action, I look to Mr. Wiley's complaint to determine whether it alleges an event potentially covered by the policy, or a factual or legal basis on which Philadelphia Indemnity might be found liable and required to indemnify Mr. Greer.

In his complaint, Mr. Wiley alleged that NTAC and Stonebridge Church "organized and sponsored a high school church mission trip to Wolf Creek Ski

10

Resort for fellowship and for attendees such as Defendant Greer to seek and establish strong and lasting relationships with Jesus Christ while skiing and snowboarding with others." [Doc #50-1 ¶7]  And, "[t]hrough snowboarding, Stonebridge Church and NTAC sought for Defendant Greer's activities to draw him deeper into his faith. On behalf of Stonebridge Church and NTAC, Defendant Greer was to become a devoted follower and worshiper of Defendants Stonebridge Church and NTAC." [Doc #50-1 ¶8]  Mr. Wiley further alleged that "Defendant Greer was performing church activities while snowboarding at Wolf Creek . . .". [Doc #50-1 ¶9]

As to the ski accident, Mr. Wiley's complaint alleged that "Defendant Greer was a new snowboarder" and NTAC and Stonebridge Church "did not provide supervision at Wolf Creek of the new high school snowboarders." [Doc #50-1 ¶11&12]  At the time of the ski accident, Mr. Greer was snowboarding with two friends, on a run where the terrain "was above Defendant Greer's skill level . . . when he gained too much speed and skied into [Mr. Wiley], who was the downhill skier." [Doc #50-1 ¶13-16, 22]

Finally, Mr. Wiley's complaint alleged that NTAC, Stonebridge Church, and Mr. Greer should have foreseen the unreasonable risk of harm and bodily injury from "a snowboarder who recklessly, carelessly or negligently failed to board in control" and who "failed to keep a proper lookout for downhill skiers or understand and honor his duty to maintain control of his speed and course." [Doc #50-1 ¶20&21]  He claimed that NTAC and Stonebridge Church owed a duty to "supervise the

11

minor children it brought to the Wolf Creek slopes, especially those inexperienced teenagers new to snowboarding" and "ensure [Mr. Greer] and other members of the sponsored trip could properly ski and follow proper skiing protocol." Thus, the complaint asserted that NTAC and Stonebridge Church "negligently, carelessly, and recklessly breached their duty" to Mr. Wiley by failing to supervise Mr. Greer, and allowing him to snowboard on terrain above his skill level without knowledge of skiing protocol and his duty to downhill skiers. [Doc #50-1 ¶30&31]

The general liability insurance policy at issue designates and provides coverage for the named insured as:

> The North Texas Annual Conference of the United Methodist Church and all its affiliated churches, districts, agencies, foundations, camps and their related and/or controlled properties as well as related and/or controlled properties of The North Texas Annual Conference of the United Methodist Church. [Doc #51-1]

The parties agree that Stonebridge Church is an "affiliated church" and is a named insured under the policy.

Additional insureds – i.e. trustees of the church, or members of the clergy when performing their duties – are also provided coverage pursuant to Endorsement CG 20 22. This Endorsement also includes the following as additional insureds:

> Any of your church members, but only with respect to their liability for your activities or activities they perform on your behalf. [Doc #51-1]

12

My review of Mr. Wiley's complaint fails to reveal a factual allegation that Mr. Greer was a church member of Stonebridge Church. Rather, the complaint averred only that Mr. Greer was an "attendee" on a church-sponsored mission trip with Stonebridge Church, and that at the time of the ski accident he was "performing church activities" related to Stonebridge Church's mission. The Endorsement naming additional insureds, as relevant here, provides coverage for "[a]ny of [Stonebridge Church] church members." [Doc #51-1] Therefore, even assuming the truth of the allegations in the complaint, because Mr. Wiley failed to allege that Mr. Greer was a church member of a named insured, the Endorsement that would extend coverage to him under the policy is not applicable. *See generally EMC Ins. v. Mid-Continent Cas., supra,* 884 F. Supp.2d at 1160 (finding no duty to defend when the complaint did not allege that the party seeking coverage was an "insured" in order to be covered by the policy).

The underlying complaint is therefore insufficient to allege an event that raises a potential claim for liability assigned to Philadelphia Indemnity. Under either Colorado or Texas law, Mr. Wiley's complaint in the state court action fails to trigger Philadelphia Indemnity's duty to defend Mr. Greer. *See United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 959-60 (10th Cir. 2011)(finding the insurer had no duty to defend when the allegations contained in the complaint were insufficient to indicate a factual basis on which the insurer might eventually be held liable to indemnify the insured); *Nat'l Union Fire Ins. Co. of Pittsburgh v.*

*Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)(ruling that if a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit).

### D. Duty to Indemnify

With regard to Philadelphia Indemnity's obligation to indemnify under the policy, the question is whether Mr. Greer is, pursuant to the undisputed facts, covered by the Endorsement at the time of the ski accident that resulted in injury to Mr. Wiley. The parties dispute whether the liability Mr. Greer incurred in the ski accident falls within the Endorsement language in order to trigger the duty to indemnify.

The duty to defend is separate and distinct from an insurer's ultimate obligation or duty to indemnify its insured. *Hecla Mining v. N.H. Ins., supra,* 811 P.2d at 1086 n.5; *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009); 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3D §200:3 (1999). "The duty to indemnify arises only when the policy actually covers the harm." *Cyprus Amax v. Lexington Ins., supra,* 74 P.3d at 301; *see also D.R. Horton-Texas v. Markel, supra,* 300 S.W.3d at 743 (the duty to indemnify the insured is the duty to "pay all covered claims and judgments against an insured").

Pursuant to Colorado law, whether an insurer faces an obligation to indemnify can only be decided after its insured's liability had been determined. *Hecla Mining v. N.H. Ins., supra,* 811 P.2d at 1086; *see also Cyprus Amax v.*

14

*Lexington Ins., supra,* 74 P.3d at 301 (noting that "the trigger for the duty to indemnify must normally await a determination of actual liability presupposes that indemnity flows from the nature of the ultimate verdict, judgment or settlement.") Texas law likewise provides that "it is well settled that the facts actually established in the underlying suit control the duty to indemnify." *Pine Oak Builders v. Great Am. Lloyds, supra,* 279 S.W.3d at 656 (citations omitted).

    As indicated above, the Endorsement provides coverage for:

> Any of your church members, but only with respect to their liability for your activities or activities they perform on your behalf. [Doc #51-1]

The policy designates that the terms of "you" and "your" "refer[s] to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." [Doc #51-1] Therefore, the Endorsement provides coverage for:

> Any of [Stonebridge Church's] church members, but only with respect to [the church member's] liability for [Stonebridge Church's] activities or activities [the church member] perform[ed] on [Stonebridge Church's] behalf. [Doc #51-1]

As a result, coverage would be available to Mr. Greer if he was a church member and he incurred liability: (1) for Stonebridge Church's activities; or (2) for activities he performed on Stonebridge Church's behalf.

    Mr. Wiley argues that the Endorsement for church members provides coverage when a church member is "engaged in a church activity." He contends

15

that since the ski trip was sponsored by Stonebridge Church, and included other indicia of church involvement, Mr. Greer was engaged in a church activity at the time of the ski accident.  Alternatively, since the policy does not define what constitutes a church activity, Mr. Wiley asserts that the Endorsement is ambiguous and must be construed in favor of providing coverage to Mr. Greer.  *See Tower Insurance Company v. Chang*, 601 N.W.2d 848, 851 (Ct. App. 1999)(finding insurance coverage in a subrogation action, for fire damage caused when two young church members lit a candle while they were on their way from church services to a confirmation class, because what counts as a "church activity" for church member coverage was ambiguous).

Philadelphia Indemnity argues that the Endorsement language is not ambiguous; rather, it asserts that the Endorsement provides coverage for church members under two different situations, neither of which applies here.  It first argues that the language provides that church members are covered with "respect to their liability for [Stonebridge Church's] activities," which means coverage for the vicarious liability of church member for activity undertaken by Stonebridge Church "as a corporate entity."  In *Marks v. Scottsdale Insurance Company*, 791 F.3d 448 (4th Cir. 2015), the Fourth Circuit reviewed endorsement language that covered members of a hunting club, "but only with respect to [member] liability for [the club's] activities or activities [members] perform on [the club's] behalf." *Id.* at 452. The Court ruled that because the underlying case did not seek to hold the club

member "vicariously liable for the alleged negligence of the Club" – but instead the club member's negligence when accidently shooting a third-party who was driving by the club's property –  the endorsement language that provided coverage for "member liability for [the club's] activities" did not apply.  *Id.* (citations omitted)(finding that "the clause covering club members 'with respect to [member] liability for [the club's] activities' unambiguously restricts coverage to situations involving a member's alleged vicarious liability for the activities of the Club as an entity").  *See also Everett Cash Mut. Ins. Co. v. Insurance Corp. of Hanover*, 2008 WL 4453113 (M.D. Penn. 2008)(unpublished) (holding that the language "your activities" in an additional insured endorsement for hunting club members meant "actions taken by the Club in its in its capacity as a non-profit corporate entity"); *Lenox v. Scottsdale Ins. Co.*, 2005 WL 1076065 (D.N.J. 2005)(unpublished) (interpreting identical policy language to connote "activities undertaken by the corporate entity, such as when the club enters into a service contract").

Philadelphia Indemnity further argues that the second situation in the Endorsement – coverage for "activities [the church member] perform[ed] on [Stonebridge Church's] behalf" – is also not applicable here because Mr. Greer was not acting on Stonebridge Church's behalf when snowboarding on March 8, 2016.  In *Mt. Hawley Insurance Company v. National Casualty Company*, Judge Christina M. Arguello looked at whether a go-cart track was an additional insured on a policy issued to the National Karting Alliance (the "NKA").  2015 WL 428768 (D. Colo.

2015)(unpublished). The issue was whether the go-cart track was "acting on [NKA's] behalf" during a pre-race practice session when a maintenance vehicle entered the track and collided with a go-karter. *Id.* Judge Arguello applied Indiana law to the language of the additional insured endorsement of the policy, and ruled that there was no ambiguity in the terms "acting on your behalf" which means an "act done for the benefit of the [named insured] at its request" and "at the direction, request, or benefit of the [named insured]." *Id.* (quoting & relying on *Lenox v. Scottsdale Ins. Co., supra,* and *Marks v. Scottsdale Ins. Co.,* 2014 WL 3767116 (E.D.Va. 2014)(unpublished), *aff'd,* 791 F.3d 448 (4th Cir. 2015)). Because the go-kart track "acted voluntarily and for its own benefit on the day of the accident and not at the direction, request, or benefit of NKA," Judge Arguello ruled that "the additional insured endorsement does not extend to [the go-kart track] in this case." *Mt. Hawley Ins. v. Nat'l Cas., supra.*

I agree with Philadelphia Indemnity's cited authority, and conclude that the policy language at issue here is not ambiguous and does not encompass or include Mr. Greer as an additional insured. The Endorsement in this case unambiguously extends coverage to church members in two limited circumstances – either when the church member incurs liability for Stonebridge Church's activities, or when the church member incurs liability for activities he or she performed on Stonebridge Church's behalf. Neither situation applied here.

18

The first situation provides coverage when liability is incurred by a church member for the activities of Stonebridge Church as an entity; it does not encompass a church member's actions when merely participating in a activity that is sponsored by Stonebridge Church. *See Marks v. Scottsdale Ins., supra,* 791 F.3d at 452. Because Mr. Greer incurred liability based on his actions related to the March 2016 ski accident, not because of or due to the activities or actions of Stonebridge Church, this first clause of the Endorsement doesn't apply. The second clause provides coverage for a church member as an additional insured when he or she incurs liability for "activities [the church member] perform[ed] on [Stonebridge Church's] behalf." The trip may have been sponsored by Stonebridge Church for its members for the purpose of strengthening their faith and encouraging their participation, membership and advancing the mission of Stonebridge Church. I cannot conclude, however, that Mr. Greer's voluntary activity of snowboarding, causing the ski accident that injured Mr. Wiley, was an act made on behalf of Stonebridge Church as it was not activity done "at the direction, request, or benefit" of Stonebridge Church. *See Mt. Hawley Ins. v. Nat'l Cas., supra; Marks v. Scottsdale Ins., supra.*

Therefore, because neither of the limited circumstances under the Endorsement providing coverage to church members applies to Mr. Greer for the liability he incurred due to the March 2016 ski accident, I conclude that he is not covered as an additional insured under the policy at issue, and so Philadelphia Indemnity therefore has no duty to indemnify Mr. Greer for the ski accident that

19

caused Mr. Wiley's injuries on March 8, 2016.

ACCORDINGLY, I DENY the summary judgment motion filed by Frank Wiley [Doc #50] and I GRANT the summary judgment motion filed by Philadelphia Indemnity [Doc #51]. As a result, IT IS ORDERED that the declaratory relief request by Philadelphia Indemnity be entered against Mr. Wiley as follows:

> 1. That Philadelphia Indemnity has no duty to provide insurance, including defense or indemnity, coverage to Taylor Greer for the ski accident which took place on March 8, 2016 at Wolf Creek Ski Area, Mineral County, State of Colorado, involving Mr. Greer and Frank Wiley; and
>
> 2. That there is no coverage under any part of the Philadelphia Indemnity policy for the March 8, 2016 ski accident.

IT IS FURTHER ORDERED that summary judgment is entered in favor of Philadelphia Indemnity, as a matter of law, against the remaining Defendant, Frank Wiley. Costs to be awarded to Philadelphia Indemnity. I DISMISS this case.

Dated: May 22, 2018 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE